CLENDENING and Another *v.* CLYMER, Guardian of EDWARDS.

*A.*, by her will, directed that her property should be sold by her executors, and the proceeds, after paying certain other legacies, distributed as follows, viz: To her daughters, *B.*, *C.*, and *D.*, the sum of three hundred dollars each; the residue of her estate to be divided equally among her said daughters, share and share alike. *C.* died before the testatrix, leaving one son, her only heir, surviving. At the time of the execution of the will, the testatrix held lands, but disposed of the same before her death. The executor having paid the debts, and a portion of the legacies, brought into Court a balance of $852 for distribution; and, thereupon,

Nov. Term,
1861.

CLENDENING
v.
CLYMER.

the guardian of the minor son of C. filed a petition against B., alleging, that in the lifetime of the testatrix, she gave to B. and D., in lands and money, their full share of the estate, with an agreement that such advances should be in full discharge of the bequests to them, and asking that B. and D. be excluded from the distribution. It appeared in evidence, that the testatrix had advanced to B. and D., the sum of one hundred dollars each, and also certain lands, valued at four hundred dollars; and there was evidence tending to show, that the lands and money were given, and received by them, in full of their legacies, and of their shares in the estate.

*Held*, that under § 13, 2 R. S., p. 313, the legacy to C. did not lapse by her death, in the lifetime of the testatrix, but vested in her son.

*Held*, also, that the money and land received by B. and D., must be regarded as an ademption of their respective legacies of three hundred dollars.

*Held*, also, that where a parent, or other person *in loco parentis*, bequeaths a legacy to a child, or a grandchild, and afterward, in his lifetime, gives a portion to, or makes a provision for, the same child or grandchild, without expressing it to be in lieu of the legacy, if the portion so received, or the provision made, be equal to, or exceed the amount of the legacy; if it be certain, and not merely contingent; if no other distinct object be pointed out; and if it be *ejusdem generis;* then it will be deemed an ademption of the legacy.

*Held*, also, that the doctrine of constructive ademption does not apply to a devise of a mere residue; and parol evidence not being admissible to show that advancements were intended to operate as an ademption of a residuary legacy, the residuary interest given by the will to B. and D. can not be regarded as adeemed, by the land and money advanced to them.

Friday;
November 29.

APPEAL from the *Miami* Common Pleas.

WORDEN, J.—*Phoebe Clymer*, in her lifetime, executed a will, by which she directed that her property, both real and personal, be sold by her executor, and the proceeds distributed among her children, as therein specified. After making several bequests to other children, the will contains the following items, viz:

"*Seventh*. I will and bequeath to my dearly beloved daughter, *Cynthia Clendening*, and to her heirs, three hundred dollars.

"*Eighth*. I will and bequeath to my dearly beloved daughter, *Phœbe Edwards*, one hundred and forty dollars, which, with what she has received, will make her portion three hundred dollars.

"*Ninth*. I will and bequeath to my dearly beloved

daughter, *Olinda Bills*, and her heirs, three hundred dollars.

" *Lastly.* I will and direct that the residue of my estate be divided equally among my three daughters, *Cynthia Clendening*, *Olinda Bills* and *Phoebe Edwards*, share and share alike."

At the time of the execution of the will, the testatrix had lands, but disposed of the same before her death.

The executor, having paid the debts, and some of the legacies, including the $140 to *Phoebe Edwards*, found left in his hands for distribution, the sum of $852.84; which sum he brought into the proper Court, to be distributed as it might order, there being conflicting claims set up thereto.

Thereupon, *John Clymer*, as guardian of *Christian Edwards*, (who was the son and only issue of *Phoebe Edwards*,) filed his petition against *Cynthia Clendening*, and her husband, *Robert*, alleging that in the lifetime of the testatrix, and a few days before her death, she gave to said *Cynthia*, and also to said *Olinda Bills*, in lands and money, their full share of her estate, with an agreement that such advances should be in full discharge of the bequests. The petition prayed that *Cynthia* and *Olinda* be excluded from the distribution.

*Clendening* and wife, who were alone made defendants to the petition, demurred thereto, but the demurrer was overruled and exception taken. They then answered; and such proceedings were had, upon trial of the issues formed, as that it was ordered by the Court, that the clerk pay $50 to one, and $100 to another legatee, whose legacies had not been paid, and about which sums there is no controversy; and that the residue be paid to said *Christian Edwards*.

*Clendening* and wife appeal. We shall pass over the questions as to the validity of the petition, as the substantial merits of the case are otherwise presented by the record.

The testatrix survived *Phoebe Edwards;* the legacy to her, however, did not lapse, but the right thereto vested in her descendant *Christian*. 2 R. S. 1852, § 13, p. 313. By the order of the Court, he gets not only the $140 bequeathed to

Nov. Term,
1861.

CLENDENING
v.
CLYMER.

his mother, but the whole residue of the estate, which was directed by the will to be distributed equally between his mother and *Cynthia* and *Olinda*. This order of the Court was made on the following facts, appearing by the evidence: The testatrix, in her lifetime, advanced to *Cynthia* and *Olinda*, each, the sum of $100. The inference from the evidence is, that those advancements were made after the execution of the will. She, also, a few days before her death, made arrangements by which *Cynthia* and *Olinda*, each, or perhaps their husbands in their right, received from her, lands estimated at $400. There is parol evidence having a tendency to show that the land and money thus received by them, were received in full of their legacies, and of their share in the estate, and were so intended by the testatrix.

We are inclined to the opinion that the money and land, thus received by *Cynthia* and *Olinda*, may be regarded as an *ademption* of the respective legacies of $300, thus bequeathed to them; though this view is not, perhaps, entirely free from difficulty. Where a parent, or other person *in loco parentis*, bequeaths a legacy to a child or grandchild, and afterward, in his lifetime, gives a portion, or makes a provision for the same child or grandchild, without expressing it to be in lieu of the legacy, if the portion so received, or the provision made, be equal to, or exceed the amount of the legacy; if it be certain and not merely contingent; if no other distinct object be pointed out; and if it be *ejusdem generis;* then it will be deemed an ademption of the legacy. The ground of this doctrine seems to be, that every such legacy is to be presumed as intended by the testator to be a portion for the child or grandchild, whether so called or not; and that, if he afterward advances the same sum upon the child's marriage, or any other occasion, he does it to accomplish his original object, as a portion; and that under such circumstances, it ought to be deemed an intended satisfaction or ademption of the legacy, rather than an intended double portion. 2 Story Eq., §§ 1111–1112. *Vide*, also, *Langdon* v. *Astor's Ex'rs*, 16 N. Y. 9. The difficulty in the application of this doctrine to the present case, is, that the

money bequeathed, and the land advanced, are not, in the language of the books, *ejusdem generis*. But this, in view of the whole case, we regard as unimportant. The money bequeathed was to be raised by a sale of the lands of the testatrix. The advancement of the land itself, or a portion of it, may be regarded as substantially accomplishing the same object. Or the land, at the estimated value, may be regarded as having been received as so much money.

What we have said has reference to the general legacies of $300 to *Cynthia* and *Olinda*. We are of opinion that these legacies were correctly found to have been adeemed. But in respect to the residuary legacies, a very different question *is* presented. The doctrine of presumed or constructive ademption is not applicable to them. "It does not apply to the case of a devisee of a 'mere residue; for it has been said that a residue is always changing. It may amount to something, or be nothing; and therefore no fair presumption can arise of its being an intended satisfaction, or ademption." 2 Story's Equity, § 1115.

There being no presumption that a subsequent advancement was intended as an ademption of the residuary legacies, the question arises whether parol evidence is admissible to show that such was the intent of the testatrix, and thereby defeat the terms of the will. This leads us to inquire into the principle upon which parol evidence is admissible, in respect to general legacies. If a testator bequeath his son a thousand dollars, and afterward, in his lifetime, advance him the same sum, the law presumes that he intended the advancement as an ademption of the legacy; but as this is only a presumption, parol evidence is admissible to repel it, and show that the sum advanced was intended to be cumulative; and when such evidence is given, it may be met, and the presumption strengthened, by the same kind of evidence. No case has been cited, and we know of none, where parol evidence has been received to show that advancements were intended to operate as an ademption of a residuary legacy. On the contrary, the case of *Freemantle* v. *Bankes*, 5 Vesey, 79, is directly against it. There, the Chancellor says: "To admit it in this case, would be to admit parol evidence to

Nov. Term, 1861.

CLENDENING
v.
CLYMER.

make a part of the will. In the cases referred to, of the advancement of a child in the life of the testator, it was to rebut an equity." The cases referred to were cases where parol evidence was held admissible to rebut the presumption that an advancement was an ademption of a general legacy; and if admissible for that purpose, it was said to be admissible on the other side. The principle is pretty clearly elucidated in the case of *Timberlake et ux.* v. *Parish's Ex'r*, 5 Dana, 346. The Court say: "If a parent bequeaths property to a child, the bequest would be construed as having been intended as a portion; so, too, if a stranger, showing by his will that he assumes to stand *in loco parentis* toward his legatee, makes a bequest to another stranger. And therefore, in either case, if the testator afterward makes a provision by way of advancement to his legatee, it will, according to its character and extent, be presumed to be an ademption, altogether, or *pro tanto*, of the bequest. In such case, the legal effect of the bequest, arising from the construction of the will itself, would be defeated by a presumption resulting, *prima facie*, from the fact that the last act was intended as an execution of the purpose, in whole or in part, contemplated by the first...  And, of course, such a presumptive ademption or satisfaction, arising from such coincidences, and not being conclusive and incontrovertible, may be either fortified or repelled by any facts which may tend to the same or a different inference. And the admission of parol testimony for such purpose, would not be subversive of any rule of evidence, or inconsistent with the policy of the statute of frauds, or of wills; because it would not be used for the purpose of contradicting or explaining evidence of a higher grade, or of defeating the constructive effect of any writing. But where, as in this case, a will or other document of title, is ascertained to import a certain legal effect, if such effect could be controlled or defeated by extrinsic parol evidence, inconsistent with the legal construction of the written memorial, the established gradation of evidence would be abolished, or disregarded, and the statute of frauds, and of wills, and of conveyances, would be perfectly nugatory........The question as to the effect and purpose of the legacy in this

case, is one altogether of legal construction. There is no presumption arising from any fact appearing in the will, or out of it, which parol or extrinsic evidence would be competent to *fortify* or *defeat*. The object of the extraneous evidence introduced, but objected to, was not to fortify or repel a presumption previously arising from the will, or otherwise; but it was to defeat the legacy, by proving, not a latent ambiguity, but a fact inconsistent with the constructive import and effect of the will itself. If such an end can be thus attained, the effect of the most solemn wills will always depend on the veracity of witnesses, and not on the language and provisions of the wills themselves."

The advancement made to *Cynthia Clendening* not being an ademption of the amount, whatever it might be, that she was entitled, by the terms of the will, to receive as residuary legatee; and extrinsic evidence being wholly inadmissible to show that the testatrix intended by such advancement to adeem the residuary legacy, and thereby defeat the provisions of the will in that respect, it follows that she was entitled to receive one third of the residue, which was ordered to be paid to said *Christian*. As *Olinda Bills* is not before us, we decide nothing in respect to her rights in the premises.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*N. O. Ross* and *R. P. Effinger*, for the appellants.

*S. W. Robinson*, for the appellee.